**2023-1146**

# United States Court of Appeals for the Federal Circuit

LITE-NETICS, LLC,

*Plaintiff-Appellant,*

– v. –

NU TSAI CAPITAL LLC, dba Holiday Bright Lights,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the District of Nebraska in No. 8:22-cv-00314-BCB-CRZ Honorable Brian C. Buescher*

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

VINCENT J. ALLEN
J. MIGUEL HERNANDEZ
CARSTENS, ALLEN, & GOURLEY, LLP
*Attorneys for Plaintiff-Appellant*
7500 Dallas Parkway, Suite 300
Plano, Texas 75024
(972) 367-2001
allen@caglaw.com
hernandez@caglaw.com

DECEMBER 23, 2022

# TABLE OF CONTENTS

I. Introduction.....1

II. The district court's misapplication of the law in construing the claims of the Asserted Patents requires the Court to review its claim construction *de novo*.....3

III. Nu Tsai distorts this Court's unitary structure precedent.....4

IV. Lite-Netics has consistently argued that two magnets can equal one.....6

V. The '779 Patent covers one or more magnets having an aggregated pull strength of at least five pounds.....8

- A. The claims do not require the magnet to be functionally interconnected with multiple claimed elements.....8
- B. The '779 Patent does not demonstrate a clear intent to limit the claims to a single magnet.....11
- C. This Court does not require an explicit statement in the intrinsic record that the claimed amount must be aggregated—it focuses on the claimed amount's purpose.....16

VI. Lite-Netics is not precluded from alleging that the Magnetic Cord infringes the '779 Patent under the doctrine of equivalents.....19

- A. The district court relied on its literal infringement analysis to preclude Lite-Netics' doctrine of equivalents allegations.....19
- B. Nu Tsai continues mischaracterizing the accused equivalent—it is the number of magnets, not the pull strength.....20

VII. Nu Tsai misstates the posture of this appeal.....23

- A. Lite-Netics' communications are privileged if its allegations are reasonable for at least one claim.....23
- B. To overcome *Noerr-Pennington* immunity, Nu Tsai must show clear and convincing evidence of bad faith.....24
- C. Lite-Netics was not required to demonstrate its legal theories in its letters to its customers.....25

D. Lite-Netics' proposed claim construction for the Magnetic Clip is reasonable based on this Court's precedent. ....27

E. Protecting Nu Tsai's inconsequential changes as designing around the Asserted Patents is contrary to this Court's precedent and public policy. ....29

VIII. Conclusion and Statement of Relief Sought....30

Certificate of Compliance....32

# TABLE OF AUTHORITIES

**Cases**

*01 Communique Lab., Inc. v. Logmein, Inc.*,
687 F.3d 1292 (Fed. Cir. 2012) .......... 14

*800 Adept, Inc. v. Murex Sec., Ltd.*,
539 F.3d 1354 (Fed. Cir. 2008) .......... 30

*AbTox Inc. v. Exitron Corp.*,
122 F.3d 1019 (Fed. Cir. 1997) .......... 13

*Agilent Tech. v. Affymetrix*,
567 F.3d 1366 (Fed. Cir. 2009) .......... 10

*Augme Techs., Inc. v. Yahoo! Inc.*,
755 F.3d 1326 (Fed. Cir. 2014) .......... 23

*Baldwin Graphic v. Siebert*,
512 F.3d 1338 (Fed. Cir. 2008) .......... 8, 13, 15, 16

*Biagro Western Sales, Inc. v. Grow More, Inc.*,
423 F.3d 1296 (Fed. Cir. 2005) .......... 19, 20, 25

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) .......... 31

*Bradford Co. v. Conteyor N. Am., Inc.*,
603 F.3d 1262 (Fed. Cir. 2010) .......... 33

*Canon Comput. Sys. v. Nu-Kote Int'l, Inc.*,
134 F.3d 1085 (Fed. Cir. 1998) .......... 6

*Celgene Corp. v. Peter*,
931 F.3d 1342 (Fed. Cir. 2019) .......... 14

*CollegeNet, Inc. v. ApplyYourself, Inc.*,
418 F.3d 1225 (Fed. Cir. 2005) .......... 28

*Comair Rotron, Inc. v. Matsushita Elec. Corp. of Am.*, 1994 U.S. App. LEXIS 18325 (Fed. Cir. July 19, 1994) .......... 6, 7

*Cross Med Prod v. Medtronic Sofamor Danek*,
424 F.3d 1293 (Fed. Cir. 2005) .......... 5, 17

*Eli Lilly & Co. v. Hospira, Inc.*,
933 F.3d 1320 (Fed. Cir. 2019) ........................................ 26

*Elkay Manufacturing Co. v. Ebco Manufacturing Co.*,
192 F.3d 973 (Fed. Cir. 1999) ........................................ 16, 18

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ........................................ 10

*ERBE Elektromedizin GmbH v. Canady Tech. LLC,*
629 F.3d 1278 (Fed. Cir. 2010) ........................................ 28

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002) ........................................ 24

*Free Motion Fitness, Inc. v. Cybex Int'l*,
423 F.3d 1343 (Fed. Cir. 2005) ........................................ 16

*Golan v. Pingel Enter.*,
310 F.3d 1360 (Fed. Cir. 2002) ........................................ 30

*iLOR, LLC v. Google, Inc.*,
631 F.3d 1372 (Fed. Cir. 2011) ........................................ 28

*Insituform Techns., Inc. v. Cat Contracting, Inc.*,
99 F.3d 1098 (Fed. Cir. 1996) ........................................ 17, 24

*Integrated Tech. Corp. v. Rudolph Techs., Inc.*,
734 F.3d 1352 (Fed. Cir. 2013) ........................................ 26

*Inverness Med. Switz. GmbH v. Warner Lambert Co.*,
309 F.3d 1373 (Fed. Cir. 2002) ........................................ 4

*KCJ Corp. v. Kinetic Concepts, Inc.*,
223 F.3d 1351 (Fed. Cir. 2000) ........................................ 15

*K-TEC, Inc. v. Vita-Mix Corp.*,
696 F.3d 1364 (Fed. Cir. 2012) ........................................ 35

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
814 F.3d 1343 (Fed. Cir. 2016) ........................................ 3

*N. Am. Vaccine v. Am. Cyanamid*,
7 F.3d 1571 (Fed. Cir. 1993) ........................................ 11

*Philips N.V. v. Thales Dis Ais USA LLC*,
39 F.4th 1377 (Fed. Cir. 2022) ........................................ 29

*Playtex Prods., Inc. v. Procter Gamble*,
400 F.3d 901 (Fed. Cir. 2005) ........................................................................ 17

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*,
508 U.S. 49 (1993) ...................................................................................... 28

*Roton Barrier, Inc. v. Stanley Works*,
79 F.3d 1112 (Fed. Cir. 1996) ........................................................................ 35

*Salazar* v. AT&T Mobility LLC,
No. 2:20-cv-00004-JRG, 2020 U.S. Dist. LEXIS 171135 (E.D.
Tex. Sept. 18, 2020)............................................................................... 11, 12

*Sandisk Corp. v. Kingston Tech. Co.*,
695 F.3d 1348 (Fed. Cir. 2012) ...................................................................... 14

*Scimed Life Sys. v. Adv. Cardiovascular*,
242 F.3d 1337 (Fed. Cir. 2001) ...................................................................... 22

*Summit 6, LLC v. Samsung Electronics Co.*,
802 F.3d 1283 (Fed. Cir. 2015) ...................................................................... 14

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015) ........................................................................................ 3

*Thorner v. Sony Comput. Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ...................................................................... 33

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
516 F.3d 1290 (Fed. Cir. 2008) ...................................................................... 11

*Tumey v. Mycroft AI, Inc.*,
27 F.4th 657 (8th Cir. 2022) ........................................................................... 29

*Utica Enters. v. Fed. Broach & Mach. Co.*,
109 F. App'x 403 (Fed. Cir. 2004).................................................................... 6

*Varma v. Int'l Bus. Machs. Corp.*,
816 F.3d 1352 (Fed. Cir. 2016) ........................................................................ 9

## I. Introduction

Nu Tsai emphatically debates irrelevant issues in an attempt to misdirect attention away from the claim construction dispute that is at the heart of this case. Nu Tsai goes so far as to argue that *de novo* review of claim construction is improper here, even though it is well established that claim construction is a question of law. Nu Tsai would prefer that this Court defer to the erroneous legal conclusions reached by the district court as well as the clear error in finding bad faith on the part of Lite-Netics with no supporting evidence.

The district court contradicted this Court's precedent in finding that "a magnet" does not mean "one or more magnets." The district court incorrectly concluded that the lack of discussion on the number of magnets in the intrinsic evidence evinced a clear intent to limit the meaning of "a magnet" to a single magnet. Furthermore, the district court erred in concluding that using the terms "the" or "said" to describe a magnet indicated a clear intent to limit the meaning to a single magnet.

The district court committed clear legal error in finding that Lite-Netics' infringement claims were "objectively baseless" and, thus, that its communications to its customers regarding its patents are not protected by *Noerr-Pennington* immunity. Nu Tsai takes the strained position, however, that statements in the communications at issue that "copying of patented products does not promote

innovation in our industry" and that "[w]e are also considering including any known company using or reselling the HBL products as co-defendants in this lawsuit" fall outside *Noerr-Pennington* immunity. Yet, these statements are obviously directly tied to Lite-Netics' protected allegations of patent infringement. In any event, proper construction of the claims demonstrates that Nu Tsai's products infringe the Asserted Patents, making Lite-Netics' statements and allegations true.

Nu Tsai asserts that Lite-Netics is arguing for its claims to cover a two-piece structure for the first time on appeal. Yet, Lite-Netics has consistently argued for the proposition that its claims cover a two-magnet embodiment and that the two magnets here should be treated as one. This argument was in Lite-Netics' opposition to Nu Tsai's TRO motion and was also raised in the hearing at the district court. Nu Tsai, on the other hand, has never disputed that the magnetic fields of the two magnets in its Magnetic Cord combine to act as a single magnetic field.

In an attempt to avoid the claim construction dispute at the heart of this matter, Nu Tsai argues that there are "multiple independent grounds" upon which the district court issued the preliminary injunction and that Lite-Netics has failed to respond to all of these on appeal. However, the district court's decision hinges on a finding of "objective baselessness." Such a decision can only stand if *all* of Lite-

Netics' infringement theories are objectively baseless. Nu Tsai fails to demonstrate that every infringement argument and ground is objectively baseless. Because Lite-Netics demonstrates that it is likely to prevail on its infringement claims when the claims are properly construed, its communications to its customers have *Noerr-Pennington* immunity, and Nu Tsai's entire case collapses.

## II. The district court's misapplication of the law in construing the claims of the Asserted Patents requires the Court to review its claim construction *de novo*.

This Court reviews the claim construction that is the heart of the dispute in this case *de novo*. "[W]hen a district court reviews only evidence intrinsic to the patent (the patent claims and, specifications, along with the patent's prosecution history), the judge's determination will amount solely to a determination of law, and the Court of Appeals will review that construction de novo." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). Nu Tsai argues that *de novo* review is improper here because of the procedural posture as an appeal from a preliminary injunction, but claim construction is a question of law that is reviewed *de novo* regardless of the procedural posture. *See Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016) (citing *Teva* and applying *de novo* standard to claim construction in an appeal of a preliminary injunction reviewed for abuse of discretion).

No extrinsic evidence regarding the Asserted Patents or Accused Products is disputed in this case. *See, e.g.,* Appx849; Appx941. Therefore, this Court reviews the district court's determinations on claim construction, specification estoppel, and prosecution estoppel *de novo*. *See Inverness Med. Switz. GmbH v. Warner Lambert Co*., 309 F.3d 1373, 1381 (Fed. Cir. 2002).

Additionally, Lite-Netics is not precluded from presenting "new or additional arguments in support of the scope of [its] claim construction, on appeal." *Id.* (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1370–71 (Fed. Cir. 2002)) (internal citations omitted).

## III. Nu Tsai distorts this Court's unitary structure precedent.

This Court has repeatedly found that the mere depiction of a structural claim in an embodiment as a single piece, without more, does not limit the scope of the claims from covering a two-piece version. *See Cross Med. Prods. v. Medtronic Sofamor Danek, Inc*., 424 F.3d 1293, 1309 (Fed. Cir. 2005). Nu Tsai has not presented any caselaw to the contrary. *See* Appellee Br. 18–22. Instead, Nu Tsai attempts to add two additional elements that are not found in the caselaw: (1) parts that make up a structural claim feature must be physically touching; and (2) the parts cannot be "fully functioning" or "complete in and of themselves" when separated. *See* Appellee Br. 19. However, these supposed requirements are contradicted by this Court's decisions.

First, it is undisputed that the magnets in Nu Tsai's Magnetic Cord are affixed side-by-side utilizing an intermediary plastic member similar to the crown member in *Cross Med. Prods.* 424 F.3d at 1309. In that case, this Court agreed with Cross Medical that the claim language did not preclude "the presence of an intervening structure between the rod and the channel" and, thus, that the anchor seat portion could be composed of multiple components. *Id.* Likewise, in the present case, the two magnets are, in fact, connected to each other utilizing the thin intermediary plastic member. There is no space or gap between these components.

Second, it is not clear under Nu Tsai's new standard when a component fails to be "fully functioning" or "complete in and of themselves." Does it disintegrate when disassembled? For example, the planar abutment surfaces of the multi-piece tool holder in *Utica Enters. v. Fed. Broach & Mach. Co* were "fully functioning" and "complete in and of themselves" because each did not depend on the other to abut a cutting tool. 109 F. App'x 403, 405–406 (Fed. Cir. 2004). The ink chambers in *Canon Comput. Sys. v. Nu-Kote Int'l, Inc.,* were "fully functioning" and "complete in and of themselves" if separated—each could hold ink without the other. 134 F.3d 1085, 1087 (Fed. Cir. 1998). Evidently, the only components that Nu Tsai considers to be "fully functioning" or "complete in and of themselves" are its two magnets.

Nu Tsai makes a weak attempt to distinguish *Comair Rotron, Inc. v. Matsushita Elec. Corp. of Am.*, a two-component magnet case very similar to the present case, on the grounds that the two components are magnetized after they are fixed in place. *See* Appellee Br. 22 (citing *Comair*, 1994 U.S. App. LEXIS 18325 (Fed. Cir. July 19, 1994)). However, there is no requirement in the claims at issue here as to when the magnetic material must be magnetized, nor does it make a difference. The two magnetized pieces in *Comair* are still two separate magnets that are affixed next to each other, just as in this case. *Comair*, 1994 U.S. App. LEXIS 18325 at *11; *see* Appx108. And once the two pieces are magnetized, if one of the magnets in *Comair* were removed, it would still function as a single magnet, contradicting Nu Tsai's position. Furthermore, Nu Tsai does not dispute that the magnetic fields of the two semicircle magnets, in this case, combine together to act as one when affixed side by side. *Compare* Appellant Br. 25, *with* Appellee Br. 21–22.

## IV. Lite-Netics has consistently argued that two magnets can equal one.

Lite-Netics has been consistent from the beginning in the position that Nu Tsai's two magnets must be treated as one for purposes of claim construction. Nu Tsai argues that Lite-Netics did not discuss the "unitary structure" argument in its briefs opposing the preliminary injunction. Appellee Br. 18–19. However, Lite-

Netics presented its argument that Nu Tsai's two magnets literally infringe as "one magnet" in its Brief opposing the TRO (Appx585–587), which was incorporated into its brief opposing the preliminary injunction (Appx724).

Lite-Netics has not dropped this position. At the hearing on the preliminary injunction, Lite-Netics argued that the magnets in this case should be found to be one magnet based on the unitary structure caselaw. Appx937-938. Lite-Netics has presented various arguments to support this theory. Appx585–586; Appx730–732; Appx901. In fact, the district court even states in its order granting the preliminary injunction that the "one or more" argument is just a repackaging of the arguments made in the initial response brief filed just a few days after the motion for TRO and preliminary injunction was filed. Appx30.

Lite-Netics requested that the court delay ruling on the preliminary relief until a proper claim construction hearing could be held, but the court went ahead without giving due consideration to the case law on claim construction. Appx573; Appx69–70. The court adopted Nu Tsai's "common sense" approach that one magnet cannot equal two. Nu Tsai again advances that same "logical" argument to this Court even in the face of overwhelming and well-settled claim construction rules to the contrary. *See* Appx31; *c.f.*, *Baldwin Graphic v. Siebert*, 512 F.3d 1338, 1342 (Fed. Cir. 2008).

The doctrines of not limiting elements to a unitary structure and interpreting "a" to mean "one or more" came about because of situations like this where a defendant advances hyper-technical claim construction arguments to avoid infringement rather than construing the claim terms to give them a proper breadth of protection. No reasonable person with skill in the art should expect to avoid infringement by simply cutting a magnet in two, as Nu Tsai has done here.

## V. The '779 Patent covers one or more magnets having an aggregated pull strength of at least five pounds.

### A. The claims do not require the magnet to be functionally interconnected with multiple claimed elements.

The pull strength of the Magnetic Cord's magnets must be aggregated over both magnets because the '779 Patent claims do not require the pull strength to apply to a single magnet. While Nu Tsai argues that "context matters" when analyzing whether a patentee intends to limit a claim to a single article, the cases Nu Tsai cites do not support its position. *See* Appellee Br. 27–29. Specifically, Nu Tsai's cases deviate from *Baldwin*'s "a" means "one or more" rule because the disputed element was functionally interconnected with multiple claim elements in a way that required a singular interpretation:

- *Varma v. Int'l Bus. Machs. Corp.*, 816 F.3d 1352, 1362–63 (Fed. Cir. 2016): The Court held that "a statistical analysis request corresponding to a two or more selected investments" did not encompass multiple requests

that each corresponded to a single investment. The serial interlocking of singular components referring to the request made it unmistakable that a single request must correspond to at least two investments.

- *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1342 (Fed. Cir. 2016): The Court limited the claims to a single logical table because subsequent recitations of various "logical rows" limitations referred to the table and could not possibly function with a different table.
- *Agilent Tech. v. Affymetrix*, 567 F.3d 1366, 1376–77 (Fed. Cir. 2009): The Court limited the claims to a single chamber instead of a "system of enclosures" because the chamber was defined by the surfaces of two substrates enclosing the chamber and functionally connected with the probe materials.
- *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1303–1304 (Fed. Cir. 2008): The Court limited "an MPEG stream" to a single stream because it was separated into audio and video streams and subsequently recombined into a single stream by other components.
- *N. Am. Vaccine v. Am. Cyanamid*, 7 F.3d 1571, 1576 (Fed. Cir. 1993): The Court limited "linkage to a terminal portion" of a sugar chain to a "single terminal end" because the specification explicitly limited a single

> aldehyde group bonding to the terminal end. Structural interconnections with other components required a single terminal end.

Additionally, Nu Tsai argues that this Court refuses to interpret "a" to mean "one or more" when the element has "a particular specified quantitative measurable feature." Appellee Br. 23 (quoting *Salazar* v. AT&T Mobility LLC, No. 2:20-cv-00004-JRG, 2020 U.S. Dist. LEXIS 171135, *52–53 (E.D. Tex. Sept. 18, 2020)). The *Salazar* case cited by Nu Tsai does not discuss this Court refusing to comply with *Baldwin*'s rule when a claim element has "a particular specified quantitative measurable feature." Instead, the *Salazar* court explained that "a microprocessor" was limited to a single microprocessor because it was functionally connected to multiple components—just as in *Varma*. *See Salazar*, 2020 U.S. Dist. LEXIS 171135 at *53.

In an attempt to shoehorn the instant case to fit with the above cases, Nu Tsai argues in a footnote that the magnet is functionally interconnected with the socket. *See* Appellee Br. 31 n.4. However, the fact that the magnet is embedded in the base does not require that there must be only one magnet, as here, two magnets placed side by side are still embedded and still function to secure the light fixture to a ferrous surface with the requisite pull strength. *See* Appellee Br. 31 n.4. This differs from situations as in the cases referenced above, where the additional claim limitations require that the element in question be singular. This Court has only

limited an element to a single article when the element is functionally interconnected with multiple claim components such that the claim element must be a singular element to function.

Here, the claims only require the magnet to be embedded into the base of the magnet. Unlike the above cases, there are no other components to which the magnet is functionally connected. Accordingly, the claims should correctly be interpreted to cover multiple magnets.

### B. The ’779 Patent does not demonstrate a clear intent to limit the claims to a single magnet.

Contrary to the district court’s opinion, the ’779 Patent does not demonstrate a clear intent to limit the claims to a single magnet. This Court has repeatedly refused to restrict claims to a single article when the claims use “said.” *Compare Baldwin*, 512 F.3d at 1342 (“The subsequent use of definite articles ‘the’ or ‘said’ in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning.”), *with AbTox Inc. v. Exitron Corp.*, 122 F.3d 1019, 1024 (Fed. Cir. 1997) (“This term itself, ‘said chamber,’ reinforces the singular nature of the chamber.”).

Although Nu Tsai argues that *Baldwin* cannot overrule *AbTox*, the portion of *AbTox* Nu Tsai relies on is *dicta* and not binding authority for the proposition cited by Nu Tsai. *See* Appellee Br. 30. The *AbTox* court suggested that the repeated use of “said” in the claims “reinforce[d] the singular nature” of the element, but it did

not resolve the case based on the use of "said." *AbTox*, 122 F.3d at 1024. Instead, the Court explained that the claims were limited to a single chamber because each claimed component was interconnected with "said chamber," and only a single chamber could perform the claimed functions. *Id*.

Further, this Court has repeatedly distinguished *AbTox*'s statement that using "said" limits the claims to a single article—relying on *Baldwin*. *See Celgene Corp. v. Peter*, 931 F.3d 1342, 1350 (Fed. Cir. 2019); *Summit 6, LLC v. Samsung Electronics Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015); *Sandisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1350 (Fed. Cir. 2012); *01 Communique Lab., Inc. v. Logmein, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012).

Nu Tsai does not cite any cases following *AbTox* to support its position that using the term "said" to refer to an element of a claim automatically creates an exception to the general rule and restricts the element to a singular element. *See* Appellee Br. 30–31. This Court has since clarified that *AbTox* focused on the claims defining a relationship between the element in question and other apparatus components—not the use of "said." *See KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000).

Nu Tsai's argument that Baldwin's holding was "faulty and circular" and "simply assumes the conclusion" is similarly without merit. Appellee Br. 30. In *Baldwin*, the Court explained that the exception to the rule could only apply in the

rare circumstance where a patentee "evinces a clear intent" to limit the claim. *Baldwin*, 512 F.3d at 1342. The Court correctly recognized that there is no discernable difference between using "said" and "the" because both are used to "refer back to an initial indefinite article." *Id.* at 1343. As the indefinite article "a" includes a plural meaning, using "said" or "the" to refer to the same claim element "merely reflects the same potential plurality." *Id*. Accordingly, the Court required more than a patentee using "said" in a claim to limit the claims to a single component, explaining that the claims, specification, or prosecution history must compel a "departure from the rule." *Id*.

While Nu Tsai and the district court emphasized that the '779 Patent's specification repeatedly referred to "a magnet" and "the magnet" and did not mention the possibility of multiple magnets (Appellee Br. 31–32; Appx32–33), this Court has required more explicit statements to limit a claim to a singular interpretation. *See Free Motion Fitness, Inc. v. Cybex Int'l*, 423 F.3d 1343, 1350 (Fed. Cir. 2005) (refusing to limit "a cable" to a single cable, even though the specification had numerous references to a "single cable."); Appellant Br. 29.

Instead, the Court has required the specification to "conclusively establish" that the claims are limited to a single article. *See Elkay Manufacturing Co. v. Ebco Manufacturing Co.*, 192 F.3d 973, 978 (Fed. Cir. 1999) (noting that repeated references to "the feed tube" were insufficient to limit the claim). Further, the

district court's reliance on the '779 Patent's figures depicting only a single magnet fails to demonstrate an intent to limit the claims. *See* Appx32–33 (citing *Insituform Techns., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098 (Fed. Cir. 1996)). This Court has routinely rejected arguments that a patent's figures limit the scope of the claims to the preferred embodiment. *See Playtex Prods., Inc. v. Procter Gamble*, 400 F.3d 901, 907 (Fed. Cir. 2005); *Cross Med Prods.*, 424 F.3d at 1309. Unsurprisingly, Nu Tsai fails to distinguish these cases. *Compare* Appellant Br. 29 (collecting cases), *with* Appellee Br. 27–31.

Although Nu Tsai now claims that the applicant's summary of an examiner interview expressed an intent to limit the claims to a single magnet, this argument also rings hollow. *See* Appellee Br. 33. This is the first time that Nu Tsai has raised the issue that the '779 Patent's applicant purportedly limited the claims during prosecution—specifically in the examiner interview summary.

In any event, Nu Tsai's reliance on the applicant's use of "a magnet" and "the magnet" in the interview summary fails for the same reasons as the specification statements regarding a single magnet. There is nothing in these statements that conclusively describes that the use of a single magnet is the only way, and moreover, the interview summary specifically notes the applicant's refusal to limit the structure of the claimed magnet. *See* Appx238. It would be improper to read such structural limitations into the claim as Nu Tsai argues.

Instead, Nu Tsai must demonstrate that the '779 Patent applicant distinguished the claimed subject matter based on the number of magnets—which the applicant did not do. *See Elkay*, 192 F.3d at 978–79 (explaining that the patentee could not ensnare two flow tubes when it distinguished the claims from the prior art as having one tube).

The '779 Patent's claims do not define the magnet as "a single magnet." The magnet is not functionally interconnected to multiple claim components that require a single magnet to perform the claimed function. The specification never explicitly limits the claims to a single magnet. When a patent specification is silent on the number of magnets that can or should be used, this cannot be interpreted as an intent to limit the claims to a single article. *See* Appellant Br. 29–30.

Further, Nu Tsai's inability to defend the district court's flawed reliance on *Insituform*—failing even to cite the case—is particularly fatal to its case. The Court in *Insituform* restricted the claims to a single vacuum cup—solely for literal infringement—because a discontinuous vacuum could only be accomplished with a single cup. *See* Appellant Br. 27–28. In the instant case, a dual magnet configuration is not inconsistent with the claims or the specification. Accordingly, refusing to limit the '779 Patent to a single magnet is consistent with this Court's precedent.

### C. This Court does not require an explicit statement in the intrinsic record that the claimed amount must be aggregated—it focuses on the claimed amount's purpose.

As "neodymium magnet" must be interpreted as "one or more neodymium magnets," the "pull strength of at least five pounds" limitation must be aggregated over the "one or more neodymium magnets." While Nu Tsai argues that the pull strength limitation can only apply to a single magnet, not only is this non-sensical given the magnets' purpose, but it also requires a misapplication of this Court's precedent. *Compare* Appellant Br. 31–32 (discussing *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296 (Fed. Cir. 2005)), *with* Appellee Br. 25–26. In *Biagro*, the asserted claims concerned "at least one phosphorous-containing [component]" having a concentration range "in an amount of about 30 to about 40 weight percent." The parties disputed whether the court was required to aggregate the accused product's two phosphorous components in determining whether the concentration range of the claim was satisfied.

While Nu Tsai argues that *Biagro* found that "both the written description and prosecution history require the aggregate amount," it relies on an out-of-context sentence from the Court's decision. Appellee Br. 26. The Court's ensuing explanation shows that it discerned the "requirement" based, not on an explicit disclosure in the written description, but on the purpose of the claimed element (at least one phosphorous-containing component) and accused element (two

phosphorous components), and the importance of the concentration amounts concerning the elements.

The Court found that the concentration range of the phosphorus-containing components must be aggregated because the claimed and accused elements served the same purpose, indicating that the total concentration was important. *Biagro*, 423 F.3d at 1304. Further, the court noted that the patentee distinguished the prior art based on the concentration amount, which indicated that the total concentration amount was critical and necessitated aggregating the concentrations of individual phosphorus-containing components. *Id*.

Here, as in *Biagro*, the total amount of pull strength is important to the claimed subject matter because it is the total pull strength—not the individual pull strengths—that keeps the light fixture mounted to a metal surface. Whether the light fixture uses a single magnetic element or multiple elements to reach the pull strength is irrelevant. Further, as in *Biagro*, the patentee distinguished the claimed subject matter from the cited art based on the overall pull strength limitation. *See* Appx238, Appx241–242. Therefore, the pull strength must be aggregated over one or more magnets, resulting in the Accused Products infringing the '779 Patent's claims.

Nu Tsai advances various conclusory hypothetical claim constructions without any other authority to support its position that aggregation would frustrate

the public notice function. *See* Appellee Br. 24–25. But the limited information in these hypotheticals makes it impossible to determine how they might be resolved out of context, and the Court need not entertain them. Instead, the Court should look to the specification to ascertain the purpose of the pull strength limitation.

Interpreting the claims in this case to require each of the "one or more" magnets to have a five-pound pull strength frustrates the purpose behind the limitation because the total magnetic pull strength is the focus. On the other hand, interpreting the limitation as an aggregate pull strength is consistent with the specification and the purpose discussed therein. For example, the Asserted Patents describe the invention as a *magnetic base*. *See* Appx108 (3:3–5). While a "neodymium" magnet is described as a preferred embodiment, the specifications and the titles ("Magnetic Light Fixture") emphasize a magnetic base—without regard to the number or structure of the magnets used in the base. Accordingly, aggregating the pull strength of multiple magnets in a light fixture is consistent with the purpose of the claims and the specification—to produce a total pull strength sufficient to secure the fixture to a metal surface.

## VI. Lite-Netics is not precluded from alleging that the Magnetic Cord infringes the '779 Patent under the doctrine of equivalents.

### A. The district court relied on its literal infringement analysis to preclude Lite-Netics' doctrine of equivalents allegations.

The district court indicated that it was precluding infringement by equivalents under the doctrine of "specification estoppel." However, in finding specification estoppel, the district court applied the very same analysis that it used for its literal infringement analysis. Appx47 (equating "specification estoppel" to limiting "a" or "an" to "one."). The doctrines of specification estoppel and limiting the claims to a single article are not the same. As explained above, the Court only limits a claim to a single article when the intrinsic record conclusively establishes that the claims are so limited—which does not apply here. *Supra* § V.B. In contrast, "specification estoppel" applies only when the specification has "identified, criticized, and disclaimed" the claimed structure. *Scimed Life Sys. v. Adv. Cardiovascular*, 242 F.3d 1337, 1345 (Fed. Cir. 2001). While Nu Tsai claims that the district court applied "specific exclusion," this argument is unavailing because the district court relied on its literal infringement analysis of limiting the claim to a single magnet and not on any criticism in the patent of a dual magnet structure. *See* Appellee Br. 34 (citing *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326 (Fed. Cir. 2014)). Nonetheless, the district court considered "specific exclusion" the same as "specification estoppel" (Appx42, Appx44), which requires the specification to

identify something as "the opposite of" the claimed structure. *Augme*, 755 F.3d at 1335.

In this case, the district court never found that the specification "identified, criticized, and disclaimed" multiple magnets. Indeed, there is no discussion in the specification of why or if the number of magnets is important. Instead, the district court found that the specification limited the claims to "one neodymium magnet," citing the same portions of the '779 Patent's specification as it did for its literal infringement analysis disclosing a single magnet. Appx48 ("The Court will not repeat the language of the specifications leading the Court to this conclusion. It is enough to direct the parties again to the pertinent parts of the specifications."). This was a clear error of law because a finding of no literal infringement based on the claims being restricted to a single component does not preclude infringement under the doctrine of equivalents; otherwise, the doctrine of equivalents would be eviscerated. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 732 (2002); *Insituform Techns., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1107 (Fed. Cir. 1996).

### B. Nu Tsai continues mischaracterizing the accused equivalent—it is the number of magnets, not the pull strength.

While there is no need here for an equivalents finding on pull strength because that claim element is satisfied, the Magnetic Cord nonetheless infringes the '779 Patent under the doctrine of equivalents. Nu Tsai argues that the pull

strength amendment precludes infringement under the doctrine of equivalents, but this requires a distortion of Lite-Netics' infringement allegations. It is undisputed that the total pull strength of the Magnetic Cord magnets satisfies the '779 Patent's claim limitations. Accordingly, Lite-Netics' argues for equivalents in the structure or number of magnets limitation that the district court improperly limited to a single magnet, not with respect to the pull strength.

Nu Tsai does not explain how *Biagro* supports its position. *See* Appellee Br. 36. As previously explained, the patentee in *Biagro* asserted a claim requiring a phosphorous-containing component having an acid concentration between 30 and 40 weight percent. *See* Appellant Br. 33; *Biagro*, 423 F.3d at 1305. Because the accused product had a total acid concentration of about 60 percent after *aggregating* the phosphorous-containing components, the patentee alleged that 60 percent weight was equivalent to the claimed 30–40 weight percent. The Court precluded the patentee from seeking equivalents on the claimed range because it was added during prosecution. In contrast, the Magnetic Cord's total aggregated pull strength satisfies the pull strength limitation, and *Biagro*'s prosecution history estoppel does not apply here. *See* Appellant Br. 33–34.

Additionally, even if the pull strength amendment raised a presumption of prosecution history estoppel, the amendment is merely tangential to the accused equivalent as it was added in response to prior art disclosing refrigerator magnets,

not semi-circle magnets. *See* Appx238. While Nu Tsai argues that the amendment is directly related to the accused equivalent and cannot be considered tangential, its argument is again based on the incorrect equivalent (pull strength) instead of the number or structure of the magnets. Analyzing the correct equivalent, the amendment is unrelated to the number or structure of the "neodymium magnet" limitation in the claim.

Nu Tsai also incorrectly states that the analysis for equivalents never concerns whether "the alleged equivalent structure is the same structure as disclosed in the distinguished prior art references." Appellee Br. 37 (citing *Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 734 F.3d 1352, 1358 (Fed. Cir. 2013)). The case relied on by Nu Tsai does not support this proposition. The Court in *Integrated* simply explained that an amendment is never tangential when the distinguished prior art reference contains the equivalent. *Integrated*, 734 F.3d at 1358.

This Court has found that the absence of the accused equivalent in a distinguished reference indicates that the amended element was unrelated to the accused equivalent and considered merely tangential. *See Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1331 (Fed. Cir. 2019) (explaining that the distinguished reference contained a different antifolate than the accused equivalent). Here, the references cited against the '779 Patent did not contain the

accused equivalent—*i.e.*, semicircle magnets—indicating that the pull strength amendment was not directly related to the accused equivalent. *See* Appellant Br. 34.

## VII. Nu Tsai misstates the posture of this appeal.

### A. Lite-Netics' communications are privileged if its allegations are reasonable for at least one claim.

The communications at issue solely concerned Lite-Netics' allegations of patent infringement. In a desperate attempt to avoid the privilege that applies in this case, Nu Tsai claims (Appellee Br. 1) that the following statements do not fall within the privilege: 1) "While we encourage healthy competition, copying of patented products does not promote innovation in our industry, nor does it recognize the efforts undertaken by Litenetics in developing its products," and 2) "We are also considering including any known company using or reselling the HBL products as co-defendants in this lawsuit." Appx542.

No reasonable person would interpret these statements to relate to anything but the allegations of patent infringement. But in any event, the district court never found that these statements would not ordinarily be covered by privilege. Instead, the district court emphasized that Lite-Netics' statements were not privileged because they were based on purportedly baseless infringement claims. *See* Appx54. Thus, Lite-Netics' communications regarding the Asserted Patents are privileged from state law claims unless its suit is both objectively baseless and subjectively

motivated to impose anticompetitive harm. *See ERBE Elektromedizin GmbH v. Canady Tech. LLC,* 629 F.3d 1278, 1291 (Fed. Cir. 2010). Objective baselessness is found if "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus*., 508 U.S. 49, 60 (1993).

In a case involving multiple patents, the plaintiff need only show that one patent is infringed to prevail. *See CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1236 (Fed. Cir. 2005). Even if it does not win every claim construction argument, this does not turn the case into an objectively baseless one. *See iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1380 (Fed. Cir. 2011).

This is not a case where the district court's decision that the case is objectively baseless can be affirmed on multiple grounds, but it is a case where Nu Tsai must show that all grounds and arguments for infringement of both the Magnetic Cord and the Magnetic Clip are objectively baseless. If even one argument for infringement is not objectively baseless, Nu Tsai's whole case falls. Thus, Nu Tsai's argument that Lite-Netics does not address all arguments raised below is a red herring. *See* Appellee Br. 12.

### B. To overcome *Noerr-Pennington* immunity, Nu Tsai must show clear and convincing evidence of bad faith.

Additionally, Nu Tsai misstates the burden it must meet to demonstrate bad faith. *See* Appellee Br. 34, 35. Nu Tsai correctly states that for preliminary injunctions, Eighth Circuit law provides that a district court's factual findings are

reviewed for clear error, legal conclusions are reviewed *de novo*, and the ultimate decision is reviewed for abuse of discretion. However, Nu Tsai omits how this Court may find an abuse of discretion. *See Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022); Appellee Br. 13.

The Court will find an abuse of discretion if the court made "a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings." *Philips N.V. v. Thales Dis Ais USA LLC*, 39 F.4th 1377, 1379 (Fed. Cir. 2022).

Furthermore, a party attempting to show bad faith patent assertions must present clear and convincing evidence for both objective and subjective prongs. *See 800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008) (citing *Golan v. Pingel Enter.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002)). Nu Tsai's argument that it only needs to show a "fair chance" of success is misleading. *See* Appellee Br. 34. Nu Tsai attempts to shift the burden to Lite-Netics, where, in this case, and on the claims asserted by Nu Tsai, the burden is very high to show a likelihood of success as a result of the clear and convincing evidence standard. Nu Tsai failed to meet its burden.

### C. Lite-Netics was not required to demonstrate its legal theories in its letters to its customers.

Lite-Netics' September 2022 letter to its customers never specifies a particular infringement theory, nor does it identify a particular product from Nu

Tsai that it alleged was infringing. *See* Appx542. The attached first page of the complaint does not specify a theory or product either. *See* Appx543. Thus, as long as Lite-Netics successfully demonstrates that at least one infringement claim is not objectively baseless, the communication will be privileged.

Nu Tsai argues that the case is objectively baseless because Lite-Netics did not include the basis for its claim construction arguments in the letters to its customers or in its claim chart attached to the complaint. *See* Appellee Br. 26. However, a patent owner is not required to know or disclose every argument it is going to make in litigation before bringing a patent infringement action; a plaintiff is not required to "prove its case at the pleading stage."' *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (citations omitted). At this early stage in the case, the district court has not held a Markman hearing. *See* Appx17.

With respect to the subjective component of bad faith, Nu Tsai fails to point to any evidence whatsoever showing bad faith. What is interesting, however, about Nu Tsai's arguments regarding subjective bad faith is that Nu Tsai claims that because Lite-Netics was not an "erudite scholar of esoteric patent law" at the time of the communications in question, that means the statements were made in bad faith. Appellee Br. 47. This reads as a compliment and an implicit acknowledgment that Lite-Netics is right about its claim construction positions, but because it did

not have every case supporting those positions lined out when the lawsuit was filed, the communications were made in bad faith. This is a logical fallacy.

Developing a position and marshaling the caselaw as a lawsuit develops is not evidence of bad faith. Regardless, Lite-Netics has, from prior to the filing of the lawsuit, consistently maintained that the dual magnet design meets the claim limitation as the magnetic fields combine to produce a single magnetic field. *See* Appx537. Nor is the fact that Lite-Netics wanted to retain its own customers from Nu Tsai's efforts to poach them with infringing products evidence of bad faith. It is only evidence that Lite-Netics was trying to protect its hard-earned innovations through communications about infringement, which this Court has repeatedly sanctioned.

### D. Lite-Netics' proposed claim construction for the Magnetic Clip is reasonable based on this Court's precedent.

Under the Court's endorsed ordinary meaning, the Magnetic Clip is "attached" to and becomes part of the base of the light fixture. Nu Tsai argues that the Asserted Patents' specifications expressly disclaimed the Magnetic Clip. However, the Asserted Patents distinguished the prior art based on the apparatuses attaching solely to the light fixture cord—not merely because they could attach to the electric cord. *Compare* Appellant Br. 40, *with* Appellee Br. 39.

Contrary to Nu Tsai's claims, Lite-Netics contends that the distinctions apply to a particular feature—attaching solely to the light fixture cord—not to the exact

structures described in the references. This distinction is consistent with this Court's precedent that a disclaimer applies only to the "particular feature" of the prior art distinguished, which Nu Tsai never disputes. *See Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

Nu Tsai repeatedly asserts that its Magnetic Clip does not infringe the '264 Patent, dismissing Lite-Netics' proffered claim construction of "attached." *See* Appellee Br. 39–44. However, Lite-Netics' interpretation of "attached" derives from this Court's constructions of the ordinary meaning of "attached" and similar connecting terms such as "coupled," "joined," and "connected." *See* Appellant Br. 37 (collecting cases). This court has found that these terms include indirect attachment. *See e.g.*, *Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1270 (Fed. Cir. 2010).

There is no requirement to define ordinary terms in the specification, and absent any specific definition in the intrinsic record for the term "attached," the ordinary meaning should be applied. Lastly, Nu Tsai's attempts to distinguish Lite-Netics' supporting cases are based solely on technical distinctions between the apparatuses. Yet, Nu Tsai fails to address this Court's construction of the ordinary meaning of "attached."

Further, Nu Tsai fails to distinguish this Court's explanation that two pieces must be attached to function properly. *See* Appellant Br. 36. Here, the Magnetic

Clip must be attached to the bottom of the light to properly function (*i.e.*, secure the fixture to the surface). Accordingly, the district court erred as a matter of law in applying a special definition to "attached."

### E. Protecting Nu Tsai's inconsequential changes as designing around the Asserted Patents is contrary to this Court's precedent and public policy.

While Nu Tsai argues that it designed around the Asserted Patents—which this Court encourages—simply cutting a magnet in half does not qualify as designing around. *See* Appellee Br. 49–50. Nu Tsai made a trivial change to the structure of the magnet disclosed in an embodiment Lite-Netics' Asserted Patents (*e.g.*, cutting a magnet in half) to avoid infringing the Asserted Patents. This inconsequential change did not change the operation of the light fixture and was so subtle that Lite-Netics' customers identified Nu Tsai's products as the same as Lite-Netics' patented products. *See* Appx601 (¶ 10) ("Our customers were confused by these products and asked us how Nu Tsai was selling products that were essentially the same as Lite-Netics' patented magnetic light fixtures."); Appx602 (¶ 14) ("Specifically, customers asked us how Nu Tsai could sell the same product as Lite- Netics' patented product.").

This Court has recognized that such trivial changes to a patented product cannot avoid infringement because the defendant must have "designed substantial changes into the new product." *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112,

1126 (Fed. Cir. 1996); *see also K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1378 (Fed. Cir. 2012) (refusing to find no infringement on a product with trivial changes and indiscernible to customers). Accordingly, allowing Nu Tsai's trivial changes to Lite-Netics' patented products to be considered "design arounds" would be inconsistent with this Court's precedent and public policy.

## VIII. Conclusion and Statement of Relief Sought

Lite-Netics has demonstrated that the district court violated multiple lines of this Court's precedent in narrowly construing the claims of the Asserted Patents to find Lite-Netics' claims baseless. Instead, under the correct application of the law, Lite-Netics' infringement claims are not only reasonable but are likely to be successful, and its communications about the Asserted Patents were privileged by federal law. Because the district court abused its discretion by granting the preliminary injunction, this Court should reverse the district court's order granting the preliminary injunction.

Dated: December 23, 2022

Respectfully submitted,

*/s/Vincent J. Allen*
Vincent J. Allen
J. Miguel Hernandez
CARSTENS, ALLEN & GOURLEY, LLP
7500 Dallas Pkwy, Suite 300
Plano, Texas 75024
(972) 367-2001
(972) 367-2002 Fax
allen@caglaw.com
hernandez@caglaw.com

*Attorneys for Appellant*
*Lite-Netics, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 23-1146

**Short Case Caption:** Lite-Netics, LLC v. Nu Tsai Capital LLC d/b/a Holiday Bright Lights

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6973 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ______ lines of text.
- [ ] the filing contains ______ pages / ______ words / ______ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ______).

Date: 12/23/2022

Signature: /s/ Vincent J. Allen

Name: Vincent J. Allen