# United States Court of Appeals for the Federal Circuit

---

**LITE-NETICS, LLC,**
*Plaintiff-Appellant*

**v.**

**NU TSAI CAPITAL LLC, DBA HOLIDAY BRIGHT LIGHTS,**
*Defendant-Appellee*

---

2023-1146

---

Appeal from the United States District Court for the District of Nebraska in No. 8:22-cv-00314-BCB-CRZ, Judge Brian C. Buescher.

---

Decided: February 17, 2023

---

VINCENT J. ALLEN, Carstens, Allen, & Gourley, LLP, Plano, TX, argued for plaintiff-appellant. Also represented by JORGE MIGUEL HERNANDEZ.

ROBERT GREENSPOON, Dunlap Bennett & Ludwig PLLC, Chicago, IL, argued for defendant-appellee. Also represented by WILLIAM W. FLACHSBART; THUAN TRAN, Leesburg, VA.

---

Before LOURIE, TARANTO, and STARK, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Lite-Netics, LLC competes with Nu Tsai Capital, LLC d/b/a Holiday Bright Lights (HBL) in the market for holiday string lights. Lite-Netics brought a patent-infringement action against HBL in the United States District Court for the District of Nebraska. It also sent two notices, one before filing suit and one after, to its customers (in particular, stores that sell the lights), some of which were also HBL customers, informing them of allegedly infringing competitors in the market and stating Lite-Netics's intent to enforce its patent rights. Lite-Netics did not name such competitors in the first notice, but in the second notice, it identified HBL as an allegedly infringing competitor. After the second notice was sent, HBL, in the infringement action, simultaneously filed counterclaims, including for state-law torts, and moved for a temporary restraining order and a preliminary injunction, based on two of the state-law counterclaims, against certain speech by Lite-Netics about its patents. The district court issued a preliminary injunction that bars Lite-Netics from suggesting that HBL is a patent infringer, that HBL has copied Lite-Netics's lights, or that HBL customers might be sued. *Lite-Netics, LLC v. Nu Tsai Capital LLC*, 2022 WL 15523245 (D. Neb. Oct. 27, 2022).

Lite-Netics appeals the district court's preliminary injunction against its patent-related speech. We hold that the district court abused its discretion in issuing the preliminary injunction because the applicable speech-protective legal standards are not met. We vacate the preliminary injunction and remand.

## I

### A

Lite-Netics sells string lights for illuminating homes and businesses during the winter holiday season—specifically, string lights held by magnets to a surface such as

metal at a roof edge. Lite-Netics is the assignee of U.S. Patent Nos. 7,549,779 and 8,128,264, both of which are entitled "Magnetic Light Fixture" and describe and claim magnetic decorative lights. *Lite-Netics*, 2022 WL 15523245, at *1. The '779 patent issued in 2009, and the '264 patent issued in 2012 from a continuation in part of the application that became the '779 patent.

The patents describe light-fixture assemblies (to be strung together), each assembly having a magnetic base of the light socket for easy mounting of the assembly to a metal surface. '779 patent, col. 1, lines 5–9; '264 patent, col. 1, lines 14–18. Figures 1 and 9A (the same in both patents) depict an embodiment of the claimed assembly, showing one disk magnet:




FIG. 1




FIG. 9A

'779 patent, Fig. 1; *id.*, Fig. 9A (light socket base magnet labelled "1"); '264 patent, Fig. 1; *id.*, Fig. 9A.

Independent claim 1 of the '779 patent is representative for that patent. It recites:

1. A light fixture assembly, comprising:

   (a) a light bulb socket with an opening at the first end for accommodating a light bulb and at least one opening at the second end, wherein the socket includes a conductor that places a light bulb inserted into the first end

in electrical contact with electrical wires inserted through the socket;

(b) a base attached to the second end of the light bulb socket; and

(c) a neodymium magnet embedded in the base wherein said magnet had a pull strength of at least five pounds.

’779 patent, col. 4, lines 51–63. Independent claim 1 of the ’264 patent is representative for that patent. It recites:

1. A light fixture assembly, comprising:

(a) a light bulb socket with an opening at a first end for accommodating a light bulb and a second opening for insertion of electrical wires, wherein the socket includes two conductors that places a light bulb inserted into the first end in electrical contact with said electrical wires;

(b) a base integrally attached to the second end of the light bulb socket; and

(c) a magnet embedded in the base such that said magnet does not protrude outside of said base, wherein said magnet has sufficient pull force to hold said light fixture assembly to a ferrous object while said light fixture assembly is connected to a string of other light fixture assemblies.

’264 patent, col. 5, lines 19–32 (lettered indexing added).

HBL, which for a time was a customer of Lite-Netics, also sells holiday string lights. *See Lite-Netics*, 2022 WL 15523245, at *2. HBL sells a magnetic holiday string light that it calls the “Magnetic Cord,” one of the two products on which Lite-Netics’s infringement allegations focus. It is undisputed for present purposes that the Magnetic Cord is

described (and claimed) in HBL's U.S. Patent No. 11,333,309, issued in 2022 based on a 2021 application. HBL's Magnetic Cord uses two half-disk magnets, rather than the single, full-disk magnet shown in Lite-Netics's figures, at the socket base. In distinguishing its claimed invention from prior art, including Lite-Netics's '779 patent, HBL's '309 patent relies on its inclusion of drain holes in its socket base and of at least two magnets protruding below the socket base, with a channel between them to help drain moisture—features that assertedly reduce the risk of corrosion and short circuiting. '309 patent, col. 1, lines 33–45, 53–60; *see also id.* col. 1, lines 16–17; *id.* col. 4, lines 1–4. Figure 4 of the '309 patent illustrates its socket base, one half-disk magnet shown as "20," the other half-disk magnet removed:




FIG. 4

HBL sells a second product at issue here, the "Magnetic Clip" (introduced a few years before the Magnetic Cord), which, when mounted on the socket, converts a non-magnetic light string to a magnetic one.








J.A. 5 (images of mounted and unmounted Magnetic Clips); J.A. 525 (black-and-white image of a mounted Magnetic Clip included in a cease-and-desist letter sent from Lite-Netics to HBL).

B

On June 14, 2017, Lite-Netics, through counsel, sent HBL a cease-and-desist letter that referred to "U.S. Utility Patent No[s]. 7,549,779 and 8,128,264." J.A. 525–26. The letter included a picture of the Magnetic Clip and requested that HBL stop "selling these products or any other products that infringe" Lite-Netics's patents. J.A. 525–26. No further communication between the two companies occurred for almost five years.

On April 12, 2022, Lite-Netics sent HBL another cease-and-desist letter. This letter, referring to "U.S. Utility Patent Nos. 7,549,779 and 8,128,264," included a picture of the Magnetic Cord and "demand[ed]" that HBL respond, either explaining why it was not infringing Lite-Netics's patents through the sale of the Magnetic Cord and Magnetic Clip or indicating that HBL will stop selling these and any other allegedly infringing products. J.A. 528–29. HBL responded to Lite-Netics on April 19, 2022, asking Lite-Netics to explain how HBL infringed its patents when the Magnetic Cord has no single magnet with a pull strength of at least five pounds or that does not protrude outside the socket base. J.A. 531. On May 27, 2022, Lite-Netics replied to HBL with evidence that it said showed (a) that the combined pull strength of the pair of (half-disk) magnets in the Magnetic Cord exceeds five pounds and (b) that the Magnetic Cord's magnets did not protrude from the perimeter of the base. J.A. 536–37. HBL wrote back on June 21, 2022, reasserting its one-versus-two position and insisting that the non-protrusion requirement of the '264 patent precludes not just protrusion from the perimeter of the base but also protrusion below the base. J.A. 539.

Communications between Lite-Netics and HBL ceased after this response.

On August 31, 2022, Lite-Netics sued HBL in the District of Nebraska for infringement of the ’779 and ’264 patents by HBL’s making, selling, and other actions involving the Magnetic Cord and the Magnetic Clip. Lite-Netics asserted direct infringement, induced infringement, and contributory infringement under 35 U.S.C. § 271(a), (b), and (c). And it alleged that the infringement was willful.

Both before and after filing suit against HBL, Lite-Netics communicated with its customers, some of which were also HBL customers, about allegedly infringing competitors in the market. Before filing suit, in May 2022, Lite-Netics notified its customers “of recent attempts by other companies to make and sell similar products” to those “protected by U.S. [P]atent Nos. 7,549,779 and 8,128,264” and of its intent to explore “all legal rights and remedies to stop” these companies (May Notice). J.A. 533; *Lite-Netics*, 2022 WL 15523245, at *5. Lite-Netics did not accuse any particular competitor of infringement in the May Notice. J.A. 533; *Lite-Netics*, 2022 WL 15523245, at *5. In September 2022, however, after filing suit, Lite-Netics sent another letter to its customers (September Notice). J.A. 542–43; *Lite-Netics*, 2022 WL 15523245, at *6. The September Notice stated that Lite-Netics’s magnetic string lights were protected by the ’779 and ’264 patents; that other companies were attempting to “copy” Lite-Netics’s patented products; that Lite-Netics had filed a “patent infringement lawsuit against [HBL]” to stop it from “making and selling infringing products”; and that Lite-Netics was “also considering including any known company using or reselling the HBL products as co-defendants in this lawsuit.” J.A. 542; *Lite-Netics*, 2022 WL 15523245, at *11. The September Notice included the first page of Lite-Netics’s complaint from its patent-infringement suit against HBL. J.A. 542; *Lite-Netics*, 2022 WL 15523245, at *12.

On September 30, 2022, after Lite-Netics sent the September Notice, HBL filed a motion to dismiss Lite-Netics's action for failure to state a claim and also asserted six counterclaims against Lite-Netics: (1) unfair competition and false advertising under federal law; (2) unfair competition under Nebraska law; (3) deceptive trade practices under Nebraska law; (4) tortious interference with business relations and prospective business relations under Nebraska law; (5) defamation under Nebraska law; and (6) bad faith patent-infringement communications under Colorado law. *Lite-Netics*, 2022 WL 15523245, at *3. The same day, HBL filed a combined motion for a temporary restraining order and preliminary injunction, based on its tortious-interference and defamation claims, to bar Lite-Netics from making statements accusing HBL of copying Lite-Netics's patented products and from suggesting to HBL customers that they may be subject to an infringement suit too. On October 7, 2022, the district court granted HBL's motion for a fourteen-day temporary restraining order, which the court extended for an additional fourteen days on October 12, 2022.

On October 16, 2022, Lite-Netics filed an amended complaint. The amended complaint made explicit that its assertions of direct infringement (of both patents) were allegations of "literal infringement, the doctrine of equivalents, or both." J.A. 688, 690.

On October 27, 2022, after an evidentiary hearing three days earlier, the court issued an extensive opinion granting a preliminary injunction. *Lite-Netics*, 2022 WL 15523245. As amended on November 8, 2022, the order enjoins Lite-Netics and "its officers, directors, shareholders, and other agents"

> from making statements via letters, emails, Facebook, Twitter, or any other social media, mass media, direct marketing, robocalls, press releases, blogs, websites or otherwise suggesting "copying"

> by HBL, suggesting HBL customers will be burdened as additional defendants in this or any lawsuit, or suggesting that HBL is a patent infringer.

J.A. 73; *see Lite-Netics*, 2022 WL 15523245, at *36.[1] In its opinion, the district court addressed (1) the likelihood of HBL's success on the merits of its tortious-interference and defamation claims; (2) the likelihood of irreparable injury to HBL without the injunction; (3) the balance of equities; and (4) the public interest. *Id.* at *9 (citing *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 664 (8th Cir. 2022)). In considering the first factor, the court recognized that state-law tort claims based on the communication of patent rights, such as HBL's tortious-interference and defamation claims, "are preempted by federal patent laws, unless the claimant can show that the patent holder acted in bad faith." *Id.* at *11 (internal quotation marks omitted) (quoting *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1304 (Fed. Cir. 2018)). The district court concluded that HBL's state-law tort claims were not preempted here, centrally because it held that Lite-Netics's infringement allegations were so clearly meritless that their assertion was in bad faith. *Id.* at *15, *21, *24, *25, *28. On that basis, the court ruled that HBL would likely succeed on its tortious-interference and defamation claims and that the preliminary injunction should issue, because the non-merits preliminary-injunction considerations favored issuance. *Id.* at *10–34.

Lite-Netics timely appealed. We have jurisdiction under 28 U.S.C. § 1292(c)(1). On November 14, 2022, Lite-

---

[1] Initially, the preliminary injunction also required Lite-Netics to send the preliminary injunction order to everyone that had received the September Notice, but the district court deleted that requirement on November 8, 2022, and explained two days later that its inclusion was a clerical error. J.A. 76–77.

Netics sought an emergency stay or dissolution of the preliminary injunction, a request we denied on November 30, 2022.

II

Regional circuit law—here, Eighth Circuit law—governs our standard of review of the district court's grant of the preliminary injunction. *Macom Technology Solutions Holdings, Inc. v. Infineon Technologies*, 881 F.3d 1323, 1328 (Fed. Cir. 2018). Under Eighth Circuit law, a grant of a preliminary injunction is reviewed for "an abuse of discretion or misplaced reliance on an erroneous legal principle." *Pediatric Specialty Care, Inc. v. Arkansas Department of Human Services*, 444 F.3d 991, 994 (8th Cir. 2004) (citation omitted); *see Highmark Inc. v. Allcare Health Management System, Inc.*, 572 U.S. 559, 563 n.2 (2014) (stating that an abuse of discretion may be found where, *e.g.*, a court relies on an erroneous view of the law or commits a factual error). When reviewing the grant of an injunction that enjoins a patentee from giving notice of patent rights, "[w]e apply federal patent law and precedent relating to the giving of notice of patent rights." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 898 (Fed. Cir. 1998).

HBL asserts that, with respect to the merits component of a preliminary-injunction analysis, its burden under Eighth Circuit law is only to show a "fair chance" of prevailing. HBL Br. 14 (quoting *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019)); *see also Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 732-33 (8th Cir. 2008). But when the requested injunction restricts speech, at least in the context of enjoining implementation of state and federal statutes, the Eighth Circuit has characterized the movant's burden as more challenging, stating it as "likely to prevail on the merits." *See Rodgers*, 942 F.3d at 455; *Planned Parenthood Minnesota*, 530 F.3d at 732 n.6. And in any event, even under the "fair chance" standard, it is Federal Circuit law that

determines what is required to meet that standard as to a patent-related claim, including, here, that HBL has demonstrated a "fair chance" of prevailing on its contention that Lite-Netics's patent-infringement claims are objectively baseless. As we explain, HBL has not made such a showing.

A

The district court granted the preliminary injunction restricting Lite-Netics's speech about its patent rights, basing the injunction on HBL's tortious-interference and defamation claims, both of which stemmed from the September Notice that Lite-Netics sent to customers describing its patents, its related rights, and its intent to enforce them. *Lite-Netics*, 2022 WL 15523245, at *10, *27. The question of whether Lite-Netics may be so enjoined, like the question of whether it may be liable under state law for the September Notice, "raises considerations of federal law governing the giving of notice of patent rights." *Mikohn Gaming*, 165 F.3d at 896. "National uniformity, in confluence with the national scope of the patent grant and the general federal exclusivity in patent causes, require that determination of the propriety of . . . giving notice of . . . patent rights is governed by federal statute and precedent and is not a matter of state tort law." *Id.*

"We have held that federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004); *see also Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 709 (Fed. Cir. 1992), *abrogated on other grounds by Impression Products, Inc. v. Lexmark International, Inc.*, 581 U.S. 360 (2017). HBL's state-law claims here thus "can survive federal preemption only to the extent that those claims are based on a showing of 'bad faith' action in asserting infringement." *Globetrotter*, 362 F.3d at

1374; *see also Energy Heating*, 889 F.3d at 1304 ("State tort claims based on enforcing a patent, including for tortious interference, are preempted by federal patent laws, unless the claimant can show that the patent holder acted in bad faith."); *Mikohn Gaming*, 165 F.3d at 898 ("[F]ederal law requires a showing of bad faith in order to bar such communications."); *GP Industries, Inc. v. Eran Industries, Inc.*, 500 F.3d 1369, 1373 (Fed. Cir. 2007); *Myco Industries, Inc. v. BlephEx, LLC*, 955 F.3d 1, 10 (Fed. Cir. 2020); *SSI Technologies, LLC v. Dongguan Zhengyang Electronic Mechanical, Ltd.*, --- F.4th ----, 2023 WL 1944133, at *7 (Fed. Cir. Feb. 13, 2023).

This requirement of a showing of bad faith as prerequisite to applying state tort law to speech about infringement rests partly on First Amendment principles. *See Globetrotter*, 362 F.3d at 1375–77. The First Amendment principles are particularly significant when an injunction against speech is at issue. *See GP Industries*, 500 F.3d at 1373–74 ("[W]e wish to note the rarity of an injunction being granted against communicating with others concerning one's patent rights. This is not a grant or denial of an injunction against infringement, but an injunction against communication, a much more serious matter. . . . [A]n injunction against communication is strong medicine that must be used with care and only in exceptional circumstances."); *BlephEx*, 955 F.3d at 3 (noting that preliminary injunctions implicating "free speech" and restricting a patent holder's communication of its rights requires particular consideration of "a district court's authority to place prior restraints on that speech"); *Mikohn Gaming,* 165 F.3d at 895 ("When judicial discretion is exercised to restrain commercial communications, it is subject to special scrutiny.").

Elaborating on the bad-faith requirement and its components, we have held: "Although bad faith in this context has both objective and subjective elements, the former is a threshold requirement." *Judkins v. HT Window Fashion*

*Corp.*, 529 F.3d 1334, 1338 (Fed. Cir. 2008). Thus, "a bad faith standard cannot be satisfied in the absence of a showing that the claims asserted were objectively baseless." *GP Industries*, 500 F.3d at 1374; *see Globetrotter*, 362 F.3d at 1377. A patent-infringement allegation is objectively baseless only if "no reasonable litigant could realistically expect success on the merits." *GP Industries*, 500 F.3d at 1374 (internal quotation marks omitted) (quoting *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60 (1993)). Subjective bad faith must be addressed if allegations are determined to be objectively baseless, but not otherwise. *See Judkins*, 529 F.3d at 1338.

HBL suggests that, if the preliminary injunction at issue here is proper in its application to any speech, then it must be upheld in full. *See* Oral Arg. at 19:11–27; HBL's Br. at 14–16. HBL cites no precedent for such a rule of law, which would be contrary to the First Amendment principles that underlie the demanding requirements for a valid injunction against speech declaring the speaker's view of its patent rights. Under the First Amendment, restrictions on protected speech, including injunctions (where allowed at all), must meet tailoring requirements aimed at ensuring that they do not burden speech more than necessary. *See*, *e.g.*, *Tory v. Cochran*, 544 U.S. 734, 738 (2005); *Douglas v. Brownell*, 88 F.3d 1511, 1520 (8th Cir. 1996); *Sindi v. El-Moslimani*, 896 F.3d 1, 32–34 (1st Cir. 2018); *United States v. Local 560 (I.B.T.)*, 974 F.2d 315, 342–46 (3d Cir. 1992). Given the First Amendment principles that are part of the patent-preemption doctrine at issue here, we see no basis for a weaker tailoring requirement in the present context. We therefore reject HBL's all-or-nothing defense of the preliminary injunction.

HBL has not argued that we should uphold some portions of the preliminary injunction even if we find other portions to be an abuse of discretion. In this case, with no such argument, we will not do so, but instead will vacate the injunction if it is based on an abuse of discretion. We

conclude that it is. For the reasons set forth next, we hold that the district court abused its discretion at least in finding that Lite-Netics's infringement allegations with respect to the '779 patent are objectively baseless—a determination at the core of the rationale for granting the preliminary injunction, with its prohibition on Lite-Netics communicating its view that HBL is infringing in its making and marketing of the Magnetic Cord and Magnetic Clip. We need not and do not address other issues.[2]

B

Lite-Netics argues on appeal, among other things, that the district court erred in finding its infringement allegations concerning the '779 patent, and its application to both accused products, to be objectively baseless. We agree. An incorrect allegation of patent infringement is not necessarily objectively baseless. "Indeed, a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights 'even though

---

[2] For example, we do not address infringement of the '264 patent, with its requirement that the magnet "does not protrude outside of said base." '264 patent, col. 5, lines 28–29. A claim-construction dispute exists over whether "protrude outside of" refers, in context, only to the base perimeter or also to the central long axis of the socket. As another example, we also do not rule on the issues (concerning direct or indirect infringement) raised by Lite-Netics's statement about suing HBL customers, and by the injunction provision addressing such speech, in light of our precedent about the sequencing of certain adjudications involving manufacturers and their customers. *See In re Nintendo of America, Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014) ("When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take precedence.").

he may misconceive what those rights are.'" *Mikohn Gaming*, 165 F.3d at 897 (quoting *Kaplan v. Helenhart Novelty Corp.*, 182 F.2d 311, 314 (2d Cir. 1950)). Because there was an objectively reasonable basis for many of Lite-Netics's infringement allegations, the district court abused its discretion in finding that Lite-Netics could not have "realistically expect[ed] success on the merits" and, therefore, acted in bad faith. *GP Industries*, 500 F.3d at 1374 (internal quotation marks omitted) (quoting *Professional Real Estate*, 508 U.S. at 60).

Specifically, the preliminary injunction is to a large extent based on three legal conclusions with respect to Lite-Netics's assertion of the '779 patent: (i) that the claimed "magnet" is limited to a single magnet with a unitary structure; (ii) that Lite-Netics is estopped from asserting infringement under the doctrine of equivalents; and (iii) that the claim terms "attached" and "integrally attached" must be "something more than touching." For reasons we will set out, we conclude that Lite-Netics's position on all three of those disputes has not been shown, at this stage of the litigation (before, *e.g.*, full claim-construction proceedings or possible expert reports on infringement), to be objectively baseless. That conclusion requires vacatur of the preliminary injunction, without finally resolving the underlying disputes about claim construction, prosecution history estoppel, or other issues.

1

For the Magnetic Cord, the district court deemed Lite-Netics's allegations of direct infringement, including both literal infringement and infringement under the doctrine of equivalents, objectively baseless. In both respects, we conclude, the district court abused its discretion.

Regarding literal infringement, the court ruled that Lite-Netics could not reasonably have believed that the Magnetic Cord infringed the '779 patent because "the Magnetic Cord has two magnets, each with a pull strength less

than five pounds." *Lite-Netics*, 2022 WL 15523245, at *15. Lite-Netics argued that the '779 patent's references to "a magnet" in both its specification and its claims properly encompassed an arrangement of two magnetic pieces that together had the five-pound pull strength. *Id.* at *15–16. That argument is at least reasonable.

On the record before us, we see no basis for deeming objectively unreasonable an assertion that two such pieces would be understood by a relevant artisan as a single "magnet," whether as a matter of claim construction or as a matter of application. *See Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1377 (Fed. Cir. 2008) ("Claim terms must be given 'the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.'" (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc))); *cf. Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1309 (Fed. Cir. 2005) (discussing related issue of whether a particular claimed structure had to be unitary). Independently of that possibility, decisions of this court lend strong support to the proposition that, "in patent parlance," at least in an open-ended "comprising" claim, use of "a" or "an" before a noun naming an object is understood to mean to "one or more" unless the context sufficiently indicates otherwise. *Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1321 (Fed. Cir. 2016); *see, e.g.*, *TiVo, Inc. v. EchoStar Communications Corp.*, 516 F.3d 1290, 1303 (Fed. Cir. 2008); *Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008); *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000). Here, none of the features of the claims or specification relied on by the district court, *see Lite-Netics*, 2022 WL 15523245, at *15–20, sufficiently indicate otherwise, at least for purposes of the inquiry into whether Lite-Netics's position was objectively baseless.

The patent uses "the" or "said" when referring back to an antecedent "a" phrase, but that usage does not itself suffice to demand the singular meaning because if the "a" phrase means "one or more," so would the subsequent reference-back phrases. *Baldwin*, 512 F.3d at 1342. The patent never shows embodiments with more than one magnet, but we have generally rejected an inference of claim limitation on such a basis, where the embodiments are merely illustrative. *See*, *e.g.*, *Cross Medical*, 424 F.3d at 1309; *Phillips*, 415 F.3d at 1319–20. There is no "present invention" or other specification language that restricts the invention to a single (or single-piece) magnet, and there are no structural limitations in the claims that implicitly demand such a configuration. *See SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001) ("[T]he characterization of the . . . configuration as part of the 'present invention' is strong evidence that the claims should not be read to encompass the opposite structure."). Importantly, and more generally, nothing in the '779 patent indicates that the evident purpose of the magnet on the socket base (to attach the light string to a metal surface) can be achieved only, or with specified effectiveness, through a single (or single-piece) magnet, rather than a plurality of magnets collectively having the specified pull force. *See Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989) (interpreting a patent to include "additional structural limitations . . . defined in the specification" based on restrictive specification language describing the purpose of the claimed invention).

In these circumstances, we conclude that the district court's determination of objective baselessness of the assertion of literal infringement rests on incorrect legal principles and cannot stand.

2

The district court's application of the doctrine of equivalents to the Magnetic Cord is also flawed. Under the doctrine of equivalents, it generally suffices for an element of an accused device to be found to meet a claim limitation "if it performs substantially the same function in substantially the same way to obtain the same result" as the claim limitation, properly construed. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 38–39 (1997) (cleaned up); *see Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 400 (Fed. Cir. 1994). "To be a 'substantial equivalent,' the element substituted in the accused device for the element set forth in the claim must not be such as would substantially change the way in which the function of the claimed invention is performed." *Perkin–Elmer Corp. v. Westinghouse Electric Corp.*, 822 F.2d 1528, 1533 (Fed. Cir. 1987). But where a particular structure has been "specifically identified, criticized, and disclaimed" in the patent's specification or prosecution history, "the patentee cannot . . . invoke the doctrine of equivalents to 'embrace a structure that was specifically excluded from the claims.'" *SciMed*, 242 F.3d at 1345; *see Dolly*, 16 F.3d at 400 ("[T]he concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims."); *Augme Technologies, Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1335 (Fed. Cir. 2014) ("While we have recognized that literal failure to meet a claim limitation does not necessarily constitute a 'specific exclusion,' we have found 'specific exclusion' where the patentee seeks to encompass a structural feature that is the opposite of, or inconsistent with, the recited limitation." (internal citations omitted)).

Before the district court, Lite-Netics argued that, even if "a magnet" in the claims meant a single (unitary-structure) magnet, "the two semicircular magnets in the Magnetic Cord light-fixture bases are equivalent to the one magnet" recited in its asserted patents. *Lite-Netics*, 2022 WL 15523245, at *24. The court found this argument to be

objectively baseless, without addressing the merits of whether the two magnets in the Magnetic Cord "perform[ed] substantially the same overall function or work, in substantially the same way, to produce substantially the same overall result," *Dolly*, 16 F.3d at 400, as (by assumption now) the claimed single magnet. *See Lite-Netics*, 2022 WL 15523245, at *22. Rather, the court extended its finding that there was a clear intention to limit "a magnet" to one singular magnet to be a surrendering and foreclosure of claim scope, such that considering if two magnets were substantially equivalent to one magnet in this case would impermissibly allow for the "recapture of surrendered claim scope . . . contrary to the clear intent of the patent holder at the time of patenting." *Id.* at *25.

There is nothing unreasonable about the allegation that HBL's two half-disk magnets satisfy the function-way-result formulation for equivalence with what we now assume, for purposes of this doctrine-of-equivalents analysis, to be the single (single-piece) magnet claimed by the '779 patent. Moreover, as set out above, the specification lacks language—whether a statement of purpose, a raising and rejection of the possibility of more than one magnet, or other language—that would make it clear that use of two or more magnets together having the required pull is "the opposite of, or inconsistent with," *Augme*, 755 F.3d at 1335, the '779 patent's limitations. In particular, HBL has not shown a counterpart in this case of the facts in *Augme*, where the language of the claims and specification itself recognized a distinction between the claim limitation at issue ("embedded code") and what was asserted as equivalent (downloaded or retrieved code through links), making the latter the "opposite" of the former. *See id.* at 1335. The district court's discussion of the specification does not identify anything sufficient to make Lite-Netics's equivalence assertion baseless.

HBL argues that the prosecution history of the '779 patent estops Lite-Netics from urging that the two half-disk

magnets of the Magnetic Cord meet the claim limitation under the doctrine of equivalents. HBL made this argument to the district court, but the district court did not rule on it. We go no further here than to say that HBL has not shown in this court that, during prosecution, Lite-Netics made amendments or statements concerning the number of magnets (as opposed to the pull strength required, *see* J.A. 238) that make prosecution history estoppel so clearly applicable that it is objectively baseless for Lite-Netics to assert infringement under the doctrine of equivalents.

In these circumstances, we conclude that the district court's determination of objective baselessness of the assertion of infringement under the doctrine of equivalents rests on incorrect legal principles and cannot stand.

3

For the Magnetic Clip, as for the Magnetic Cord, the district court held that Lite-Netics's infringement allegations are objectively baseless, considering the direct infringement (by end users) needed for indirect infringement (by HBL) under both a literal-infringement theory and a doctrine-of-equivalents theory. This conclusion, like the district court's conclusions regarding the Magnetic Cord, rests on incorrect legal principles.

The Magnetic Clip itself is not a light-fixture assembly, but a dual-clip unit containing a (single) magnet that is designed to be put on the bottom of a light socket by clipping the unit to the wires coming out of the socket (which lead to adjacent sockets in the string), thus making the socket a magnetic one for adhering to an eave or other metal surface. Lite-Netics argued that when the Magnetic Clip is put on the bottom of the light socket, the Magnetic Clip forms the base within the claim requirement of a magnet-containing base attached to the light socket, so that HBL's selling of the Magnetic Clip induces and contributes to end users' infringement of the '779 patent. *Lite-Netics*, 2022 WL 15523245, at *12–13. The district court rejected Lite-

Netics's argument, ruling that the Magnetic Clip does not "attach" to the light fixture (so that a base with a magnet is not "attached" to the fixture); rather, in the district court's view, it "pockets" the bottom of the socket because the arms of the Magnetic Clip attach to the wires on either side of the base. *Id.* at *13.

There is no dispute that the Magnetic Clip, when mounted, touches the bottom of the light socket with some amount of pressure, as HBL's counsel agreed at oral argument. Oral Arg. at 26:34–27:10 (Q: "How snugly [does] the clip fit to the base of the bulb-carrying unit?"; A: "[Mr. Genenbacher, in a declaration,] says correctly that the end of the preexisting socket presses against the bottom of the [clip]."); *id.* at 27:15–18 (Q: "But [the Magnetic Clip] presses against [the socket]?"; A: "Presses against."). Lite-Netics argued that, because of the "external 'pressure,'" the Magnetic Clip was "attached" to the bottom of the socket. *Lite-Netics*, 2022 WL 15523245, at *13. The district court rejected this contention because it understood "attached" to mean "something more than 'touching'"—something along the lines of fixed or fastened. *Id.* (citing *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021)).

Even if a claim-construction analysis may ultimately support this interpretation, Lite-Netics's view is not objectively baseless. Decisions of this court offer support to Lite-Netics's construction of "attach" as broad enough to cover connecting without fastening. *See Tinnus Enterprises, LLC v. Telebrands Corp.*, 846 F.3d 1190, 1197, 1204 (Fed. Cir. 2017) (determining that the construction of "attached," under its plain and ordinary meaning, to mean "connected or joined to something" was reasonable); *In re Cuozzo Speed Technologies, LLC*, 793 F.3d 1268, 1279–80 (Fed. Cir. 2015) (determining that, under the "broadest reasonable interpretation standard," the construction of the term "integrally attached" as "discrete parts physically joined together as a unit without each part losing its own separate

identity" was reasonable). And here the pressing-against connection on its face serves the evident purpose of allowing the socket to hold its position pointing out from the magnet when joined to a metal surface. Lite-Netics's position on the linguistic issue is far from objectively baseless.

The district court also deemed Lite-Netics's allegation of infringement regarding the Magnetic Clip to be objectively baseless because it concluded that, in the '779 patent specification, Lite-Netics had disclaimed "clips" and "external 'clips' that attach to the electrical cord." *Lite-Netics*, 2022 WL 15523245, at *14–15. This too was error. It is, at the least, reasonable not to find a disclaimer in the specification that would exclude the Magnetic Clip.

The specification of the '779 patent (shared by the '264 patent) differentiates two pieces of prior art—U.S. Patent No. 5,388,802 (Dougan) and U.S. Patent Application Ser. No. 2006/0138293 (Clement)—that, according to the specification, required the installation of additional items to a light string. '779 patent, col. 1, line 34 to col. 2, line 4; *see* '264 patent, col. 1, line 39 to col. 2, line 2. The shared specification does not disclaim clips in the manner found by the district court; indeed, it recites clips in various embodiments. *See*, *e.g.*, '779 patent, col. 2, lines 15–27, 46–48, 54–57. And both the '779 patent and the '264 patent expressly claim clips. *See*, *e.g.*, '779 patent, col. 6, lines 6–7; '264 patent, col. 6, lines 16–17.

The district court interpreted the specification's discussion of Dougan and Clement as a broad disclaimer of all "clips," but the specification makes no such statement. The distinguished "clips" are reasonably seen to be different from the Magnetic Clip, for the reasons just noted. Accordingly, Lite-Netics's contention that it did not disclaim the Magnetic Clip is reasonable. In this circumstance, we conclude that the district court's determination of objective baselessness of the assertion of infringement rests on incorrect legal principles and cannot stand.

## III

For the foregoing reasons, we vacate the district court's order granting a preliminary injunction and remand the case for further proceedings consistent with this opinion.

The parties shall bear their own costs.

**VACATED AND REMANDED**